CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 1 0 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NANCY C. CREECH, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:06CV00279 |
| ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| UNITED STATES OF AMERICA, ) | United States District Judge |
| ) | |
| Defendant. ) | |

The plaintiff, Nancy C. Creech, was injured in an automobile accident on Route 220 in Botetourt County on June 7, 2004. The accident occurred when a United States Postal Service employee failed to stop his vehicle in the cross-over at the intersection of Route 681 and Route 220, and drove into the side of the vehicle in which Creech was riding as a passenger. Creech filed the present action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, claiming damages caused by the negligence of the Postal Service employee.

The government previously conceded that the accident resulted from the negligence of the Postal Service employee, leaving for trial only the issue of damages. A bench trial on this issue was held on June 25, 2007, and the matter is now ripe for decision.

### Summary of the Evidence

I.  The Accident

On the date of the accident, Creech was traveling from her home in Covington to Roanoke for a follow-up appointment with an eye specialist. She was riding to the appointment in the passenger side of her son's pick-up truck, which was driven by her daughter-in-law, Betty

Leitch. At approximately noon, while Creech and Leitch were traveling in the right lane of Route 220 South, they approached a cross-over at the intersection of Route 220 and Route 681. Creech and Leitch saw the Postal Service employee's vehicle cross Route 220 North and pull into the cross-over. Although it appeared as if the Postal Service employee was going to stop in the cross-over, he drove through the cross-over and collided with the pick-up truck.

The Postal Service employee's vehicle was traveling at an approximate speed of twenty-five to thirty miles per hour upon impact with the pick-up truck. The collision caused the pickup truck to flip three times. Each time, the truck landed on the passenger side.

When the accident occurred, Creech was wearing her seatbelt. Nonetheless, the impact of the collision caused her to repeatedly hit her head and the right side of her body on the truck. Additionally, the truck's tailgate went through the back window and hit Creech in the back of her head.

Creech and Leitch were trapped in the truck for thirty to forty-five minutes after the accident, because the doors to the truck could not be opened. The fire department ultimately used the "jaws of life" to get them out of the vehicle.

II. Creech's Post-Accident Medical Treatment

Following the accident, Creech had a laceration on her head. She also complained of shortness of breach and pain in her head, neck, and back. Creech was transported in an ambulance to Roanoke Memorial Hospital. While at the hospital, Creech underwent x-rays and received several stitches along her hairline. She was discharged between 6:00 and 7:00 p.m.

On June 10, 2007, Creech began seeing her family physician, Dr. Patricia Henderson, for problems associated with the accident. On that date, Creech complained of contusions to her

2

head and forehead, right neck pain, and right arm pain. She was prescribed a muscle relaxer and an anti-inflammatory medication for pain and discomfort.

Creech returned to Dr. Henderson for a follow-up appointment on June 15, 2004, at which time she complained of ongoing pain in her neck and right shoulder. Dr. Henderson advised her to continue taking the anti-inflammatory medication and referred her for physical therapy.

Creech had an initial physical therapy session on June 30, 2004. She subsequently returned for physical therapy two to three times per week for six weeks, for a total of nineteen sessions. During the sessions, Creech complained of pain in her right shoulder, back, and neck.

On July 21, 2004, x-rays were taken of Creech's right shoulder and right wrist. The x-rays revealed degenerative changes, but no fracture or dislocation.

Creech saw Dr. Henderson again on August 24, 2004. At that time, Creech continued to complain of pain in her right shoulder, in addition to pain in her right thumb. Dr. Henderson referred Creech to Dr. Joe Pack, an orthopaedic surgeon.

On August 26, 2004, Creech saw Dr. Pack for an evaluation of her right wrist and hand pain. During the examination, Creech also complained of having occasional numbness and tingling. Dr. Pack diagnosed Creech with basilar joint arthritis in her right wrist. He prescribed an anti-inflammatory medication and advised her to return as needed.

Creech returned to Dr. Henderson on December 2, 2004. During the examination, Creech advised Henderson that she was still experiencing pain and stiffness in her neck, right shoulder, and right lower back. Dr. Henderson noted that Creech had none of these problems prior to the motor vehicle accident. Dr. Henderson's examination revealed that Creech was tender along the

3

medial border of the scapula, and that she had some rotation in the thoracic spine with considerable tissue changes. Dr. Henderson referred Creech for x-rays and an examination by Dr. Zachary Comeaux, an osteopath who specializes in manipulative therapy and treatment.

X-rays were subsequently performed on December 9, 2004. The x-rays showed arthritis at the level of the thoracic spine, in addition to disc space narrowing and spurring.

Creech was first examined by Dr. Comeaux on December 20, 2004. During the examination, Creech complained of pain in her right shoulder, neck, and back. Dr. Comeaux's examination revealed a chest contusion, back pain, neck pain, and somatic dysfunction in the cervical rib and upper extremity. Dr. Comeaux proceeded to perform a variety of osteopathic manipulation techniques on the affected areas. Creech subsequently returned to Dr. Comeaux for similar treatment on several occasions in 2005.

In the spring of 2005, Dr. Henderson treated Creech for anxiety problems. Creech reported that she was anxious and irritable, that she was crying a lot, and that she was having difficulty sleeping due to visions of the accident.

Creech continued to complain of chronic pain when she was examined by Dr. Henderson in March of 2006. Creech also complained of having intermittent headaches since the accident. Dr. Henderson prescribed Darvocet for pain and ordered an MRI of Creech's right shoulder.

An MRI was performed on Creech's right shoulder on March 14, 2006. The MRI revealed an intrasubstance delamination tear of the rotator cuff tendon, moderate impingement due to degenerative spurring at the acromioclavicular joint, and increased signal around the acromioclavicular joint consistent with inflammatory arthritis. Creech subsequently underwent physical therapy again from March 21, 2006 to June 29, 2006.

4

In April of 2006, Dr. Henderson referred Creech to Dr. James McCoig, an orthopaedic surgeon, for an evaluation of Creech's right shoulder. Creech was first examined by Dr. McCoig on April 3, 2006. During the examination, Creech reported that she had experienced pain in her right shoulder since the motor vehicle accident, and that the pain worsened with activity. Creech also complained of night pain and occasional tingling down her right arm. Dr. McCoig noted that most of Creech's shoulder pain was around the border of the scapula, or shoulder blade, on the right side, and that she appeared to have excellent rotator cuff strength. Dr. McCoig performed an injection to the superior medial border of the scapula, and advised her to return in two weeks.

Dr. McCoig subsequently examined Creech on four occasions, during which she was treated with additional injections. On April 24, 2006, Dr. McCoig noted that Creech continued to complain of pain in her right shoulder, and that she was undergoing physical therapy without much relief. Dr. McCoig noted that Creech's pain on June 8, 2006 was localized more toward the rotator cuff than the medial scapula border.

Dr. McCoig referred Creech to a physiatrist, Dr. Rebecca Tanner. Creech began seeing Dr. Tanner in August of 2006. Dr. Tanner recommended muscle relaxers, anti-inflammatory medications, and home exercises for pain, and eventually began treating Creech's right shoulder with local injections.

Dr. Tanner performed nerve conduction and electromyogram studies on October 24, 2006. The studies revealed evidence of chronic right C5 radiculopathy. A cervical MRI was performed at the request of Dr. Tanner on November 14, 2006. The MRI showed a moderate degenerative change with mild to moderate spondylosis at C6-7, a small disc protrusion at C6-7,

and a small disc protrusion at C4-5.

On February 19, 2007, Creech underwent a functional capacity evaluation at the request of Dr. Henderson. Christine Callahan, the occupational therapist who performed the evaluation, determined that Creech's functional capacity falls within the United States Department of Labor's category of light work. Callahan noted that Creech needs to use caution when performing activities that overstress her right shoulder and neck, especially those that involve tasks at or above the height of her shoulders.

III.  Testimony of Nancy Creech, Betty Leitch, and Margaret Miller

During the bench trial, Creech testified that she was sixty-one years old on the date of the accident, and that she is now sixty-four years old. Creech testified that she has lived alone since her husband's death in 1995, and that prior to the accident, she lived an active, independent life. In addition to working as the supervisor of the infant department at the Wal-Mart store in Covington, Creech cared for her home and yard without assistance. She also walked and cared for her granddaughter on a regular basis. Creech testified that she did not previously suffer from any symptoms related to her shoulder, head, or neck prior to the accident, and that she only saw a doctor on two or three occasions during the year before the accident.

Creech testified that, since the accident, she has suffered from pain running from her right shoulder to her neck, and that the pain increases with activity. Creech testified that she still has spasms in her right shoulder area, and that she has difficulty sleeping. Creech also testified that local injections and physical therapy have provided only temporary pain relief. Additionally, Creech testified that she has a scar on her head from the laceration that she suffered during the accident, but that the scar is covered by her hair.

6

Creech testified that she now works in the jewelry department at Wal-Mart, because she is physically unable to perform all of the responsibilities that are required with supervising the infant department. Although Creech continues to do strengthening exercises at home, she is no longer able to go on walks or work in her yard.

Betty Leitch testified that Creech did not have any neck or shoulder problems prior to the accident, and that she has since observed Creech crying from pain. Leitch also testified that although Creech is very independent and does not like to ask for assistance, she has had to receive assistance with certain chores since the accident.

Margaret Miller testified that she supervises the jewelry department at Wal-Mart, and that Creech is employed as her sales coordinator. Miller testified that Creech appears to be in pain everyday that they work together. However, Miller emphasized that Creech is not a complainer, that she is a good employee, and that she always works as scheduled.

IV. Testimony of Creech's Treating Physicians

    A. Dr. Patricia Henderson

Creech submitted Dr. Henderson's March 23, 2007 deposition as an exhibit. Dr. Henderson is a doctor of osteopathy who practices family medicine at Alleghany Regional Hospital.

During her deposition, Dr. Henderson testified that Creech was a patient of hers both before and after the motor vehicle accident on June 7, 2004. Dr. Henderson summarized her post-accident examination notes and discussed the treatment that Creech has received from her and other doctors. Dr. Henderson testified that Creech has been an extremely cooperative patient and that she has not shown any signs of malingering. Dr. Henderson emphasized that she has

reviewed all of Creech's medical records since the accident, and that Creech's complaints have been consistent.

Based on her examinations of Creech and Creech's medical records, Dr. Henderson opined that Creech has several injuries that are related to the accident, and that those injuries are as follows: (1) a partial thickness rotator cuff tear; (2) a ligamental and muscle injury of the right shoulder and neck; (3) radiculopathy in the C5-6 distribution; and (4) C5-6 retrolisthesis, which is currently stable but could decompensate over time. However, Dr. Henderson testified that she could not relate the degenerative changes to Creech's thoracic spine to the accident. With respect to Creech's cervical problems, Dr. Henderson testified that Creech also suffers from osteopenia and osteoarthritis. However, Dr. Henderson emphasized that none of Creech's current complaints of pain were present prior to the accident. Dr. Henderson also explained that Creech's complaints of numbness and tingling over the course of her treatment were likely related to the C5-6 radiculopathy.

Dr. Henderson also testified that Creech's injuries are permanent and that she will require medical treatment in the future. Specifically, Dr. Henderson testified that Creech will require physical therapy; medication for pain, inflammation, and anxiety/depression; medical visits to Dr. Henderson; medical visits to Dr. McCoig; medical visits to Dr. Tanner; periodic testing, including MRI scans, CT scans, and x-rays; and possible surgery on her cervical spine as well as her right rotator cuff.

Dr. Henderson testified that Creech's average annual expenses for medications would total $3,350.16, and that Creech's average annual expenses for visits to Dr. Henderson's office would total $296.00.

8

B. <u>Dr. James McCoig</u>

Creech submitted Dr. McCoig's January 31, 2007 deposition as an exhibit. Dr. McCoig is an orthopaedic surgeon who practices at Highlands Orthopaedics & Sports Medicine in Low Moor.

During his deposition, Dr. McCoig testified that he first examined Creech on April 3, 2006 at the request of Dr. Henderson, and that he subsequently examined Creech on April 24, 2006; May 15, 2006; June 8, 2006; and July 13, 2006.

Dr. McCoig testified that Creech underwent an MRI scan prior to her visit with him, and that the MRI revealed an intrasubstance tear of the right rotator cuff, in addition to acromialclavicular joint inflammation and inflammatory arthritis.

Dr. McCoig also testified that he had the opportunity to review Creech's medical records from before and after the accident, and that since the accident, Creech has consistently complained of pain in her right shoulder and neck. Because such pain did not exist before the accident, Dr. McCoig opined that the rotator cuff injury in all likelihood was caused by the accident. However, Dr. McCoig testified that he did not believe that the accident resulted in the degenerative changes to the acromialclavicular joint. Dr. McCoig also testified that he did not have any firm reason for the pain that Creech was suffering near her shoulder blade, aside from the possibility that she was overusing the shoulder blade to compensate for weakness in the rotator cuff.

As for Creech's future medical treatment, Dr. McCoig testified that he does not contemplate rotator cuff surgery in the immediate future, but that Creech would likely need surgery in the next five years. Dr. McCoig explained that he does not recommend surgery at the

9

present time, because Creech essentially has full range of motion in her right shoulder. Dr. McCoig also emphasized that surgery should generally be avoided if a patient's pain can be relieved by other means.

Dr. McCoig testified that the hospitalization and anesthesia costs associated with rotator cuff surgery would range from $15,000 to $20,000, and that subsequent rehabilitation costs would range from $3,000 to $5,000. Dr. McCoig also testified that additional x-rays and/or MRI scans would be required prior to surgery, which would cost approximately $2,000.

Dr. McCoig testified that, without surgery, Creech would visit his office approximately three times per year, at a total annual cost of $300. Dr. McCoig also testified that it would be reasonable to expect Creech to undergo physical therapy for a month or two per year, if the physical therapy helps relieve her pain.

Following his deposition, Dr. McCoig reviewed Creech's functional capacity evaluation. On March 8, 2007, Dr. McCoig opined that Creech has a four percent impairment to the right upper extremity as a result of her rotator cuff injury, and that the impairment is permanent.

    C.    <u>Dr. Rebecca Tanner</u>

Creech submitted Dr. Tanner's March 12, 2007 deposition as an exhibit. Dr. Tanner is a physiatrist who practices in Roanoke.

Dr. Tanner testified that she began seeing Creech in August of 2006 at the request of Dr. McCoig. Dr. McCoig asked Dr. Tanner to see Creech regarding the persistent pain that Creech was experiencing in her right shoulder.

During Creech's initial examination on August 9, 2006, Dr. Tanner learned that Creech had a partial rotator cuff tear, and that she had suffered from pain near her right shoulder since

the motor vehicle accident. Over the course of Creech's treatment, Dr. Tanner prescribed a muscle relaxer and an anti-inflammatory to help control Creech's muscle pain. She also treated Creech's right shoulder muscles with local injections.

Dr. Tanner testified that Creech did not progress as well as she would have preferred, but that she did not encourage Creech to undergo rotator cuff surgery. Dr. Tanner testified that surgery is not necessary at the present time, because Creech has full range of motion in her right shoulder. When advised of Dr. McCoig's opinion that Creech would likely require surgery in the next five years, Dr. Tanner testified that this may be the case, and that Creech will have to rely on her surgeon's opinion. Dr. Tanner testified that surgery would not completely eliminate Creech's shoulder pain, and that it can sometimes cause decreased function.

Dr. Tanner also testified regarding Creech's future medical expenses. Specifically, Dr. Tanner testified that Creech would likely return to her office for local injections three times per year, at a total annual cost of $1,800. Dr. Tanner also testified that Creech would spend approximately $3,250 per year on medications and $1,200 per year on physical therapy.

V. Testimony of Dr. Robert Widmeyer

Dr. Robert Widmeyer testified as a medical expert for the government. Dr. Widmeyer is an orthopaedic surgeon in Roanoke, who has retired from active practice.

Based on his review of Creech's medical records since the accident,[*] Dr. Widmeyer testified that Creech's rotator cuff tear was not caused by the accident, but was the result of aging. Likewise, Dr. Widmeyer testified that Creech's cervical spine impairments are degenerative in nature, and that they were not caused by the accident.

---

[*] Dr. Widmeyer did not examine Creech or review her pre-accident medical records.

11

Dr. Widmeyer testified that a delaminated rotator cuff tear, like that suffered by Creech, is caused by constant grinding. Dr. Widmeyer testified that such tears are very common in people over the age of seventy, and that they often go unnoticed. In contrast to a delaminated tear, Dr. Widmeyer testified that if Creech had suffered a traumatic tear as a result of the accident, she would have been carried from her vehicle with complete loss of use in her right arm, and she would have been discolored from blood loss. Dr. Widmeyer also testified that an MRI would have been performed immediately, and that it would have shown a tendon ripped in half, rather than intrasubstance delamination, which results from wear and tear over time.

As for Creech's cervical spine impairments, Dr. Widmeyer testified that the related symptoms did not appear until months after the accident, following numerous visits to the doctor. Dr. Widmeyer testified that Creech simply has a degenerative disease, which progresses with time, and that her cervical spine was not injured in the accident in any way. Although Dr. Widmeyer agreed that Creech's symptomatology has not been fabricated or exaggerated, Dr. Widmeyer testified that it is not related to the accident.

VI. Stipulations

The parties stipulated that Creech has past medical expenses totaling $25,758.53, although they dispute the amount that is related to the accident. The parties also stipulated that Creech has past lost wages in the amount of $4,138.00.

## Summary of the Applicable Law

Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Consequently, damages generally are determined pursuant to the law of the state where the negligent act or omission

12

occurred, in this case Virginia. Roark v. United States, 456 F. Supp. 2d 739, 742 (W.D. Va. 2006).

In determining the damages to which a plaintiff is entitled, Virginia law permits the trier of fact to consider (1) any bodily injuries the plaintiff sustained and their effect on her health according to their degree and probable duration; (2) any physical pain and mental anguish the plaintiff suffered in the past and any that she may be reasonably expected to suffer in the future; (3) any disfigurement or deformity and any associated humiliation or embarrassment: (4) any inconvenience caused in the past and any that probably will be caused in the future; (5) any medical expenses incurred in the past and any that may be reasonably expected to occur in the future; (6) any earnings the plaintiff lost because she was unable to work at her calling; (7) any loss of earnings and lessening of earning capacity, or either, that she may be reasonably expected to sustain in the future; and (8) any property damage she sustained. See Virginia Model Jury Instructions - Civil, Instr. No. 9.000 (2007).

The plaintiff bears the burden of proving "with reasonable certainty or by a preponderance of the evidence that the injuries for which she claims damages were properly attributable to the accident." Diggs v. Lail, 201 Va. 871, 114 S.E.2d 743, 747 (Va. 1960). While there is no requirement that the plaintiff prove the exact amount of damages with absolute certainty, a plaintiff "must prove with reasonable certainty the amount of damages and the cause from which they resulted." Medcom, Inc. v. C. Arthur Weaver Co., 232 Va. 80, 348 S.E.2d 243, 248 (Va. 1986).

A defendant who causes injuries to a plaintiff with a preexisting condition must take the plaintiff as he finds her. Bradner v. Mitchell, 234 Va. 483, 362 S.E.2d 718, 722 (Va. 1987).

13

"Although not responsible for the preexisting condition itself, he is liable for any exacerbation of it caused by his tortious conduct." Id.

### Findings of Fact and Conclusions of Law

Having considered the aforementioned evidence, the court makes the following findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure:

1. The court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1).

2. On June 7, 2004, Creech was injured in a motor vehicle accident in Botetourt County. The government has admitted that the accident resulted from the negligence of a Postal Service employee. The accident occurred when the employee failed to stop his vehicle in the cross-over at the intersection of Route 681 and Route 220, and drove into the side of the pick-up truck in which Creech was riding as a passenger. The impact of the collision caused Creech to repeatedly hit her head and the right side of her body on the truck. Additionally, the truck's tailgate went through the back window and hit Creech in the back of her head.

3. On the date of the accident, Creech was 61 years old. Creech is now 64 years old. She has a life expectancy of 19.7 years. See Va. Code § 8.01-419.

4. Based on all of the evidence presented at trial, including the depositions and opinions of Creech's treating physicians, the court finds that Creech suffered compensable injuries as a result of the accident. Although Dr. Widmeyer, the defendant's expert, testified that neither Creech's rotator cuff injury nor her cervical spine impairments were caused by the accident, the court finds that Dr. Widmeyer's testimony on the issue of causation is not fully credible. Dr. Widmeyer's testimony, which was based solely on his review of Creech's post-

14

Case 7:06-cv-00279-GEC    Document 40    Filed 07/10/07    Page 14 of 16    Pageid#: 131

accident medical records, was entirely inconsistent with the opinions of Creech's treating physicians. Additionally, Dr. Widmeyer's testimony was inconsistent with the fact that Creech's right shoulder, neck, and back were completely asymptomatic prior to the accident, as evidenced by Creech's own testimony, her medical records, and the testimony of her treating physicians. The medical records and testimony confirm that Creech began to complain of pain in her neck and right upper extremity immediately after the accident, and that such symptoms have been permanent. While the medical evidence shows that Creech may have suffered from pre-existing arthritis or other degenerative changes, the court finds that the symptoms associated with such conditions were accentuated and accelerated by the accident.

    5.    The court finds that Creech has experienced persistent pain since the accident and that the pain increases with activity. However, the court finds that Creech's functional capacity is not severely limited. Creech has essentially full range of motion in her right shoulder despite the rotator cuff injury, and she maintains the capacity to perform light work. The court shares the defendant's concern that Creech's rotator cuff tear and cervical defects were not diagnosed until many months after the accident; however, as suggested by the plaintiff, the court agrees that this may have resulted from a failure by the treating physicians to properly diagnose the sources of Creech's discomfort. The more compelling facts in this case are that Creech was essentially asymptomatic before the accident, that she has suffered from continuous discomfort since the accident, that her treating physicians have confirmed the existence of such discomfort, and that they relate the discomfort to the accident.

    6.    It is true that Dr. Widmeyer discounted the functional impact of the rotator cuff tear, noting that many people of advancing age experience similar disorders. The court believes

that this opinion finds some support in the testimony of Creech's treating physicians, who have observed that she enjoys a full range of motion in her right shoulder. In awarding Creech damages, the court finds that her cervical symptoms and accelerated degenerative changes provide the primary basis for recovery, and that her rotator cuff tear, which has not affected her range of motion, is a secondary factor.

7. Based on the foregoing findings of fact, the court concludes that Creech is entitled to recover the full measure of past economic damages, including past medical expenses, transportation expenses, and lost wages. The court also finds that Creech will incur expenses for future medical treatment. However, the court is unable to find that the government should be held solely responsible for all of Creech's identified future medical expenses. Both Dr. McCoig and Dr. Henderson clearly testified that Creech experiences degenerative process and arthritic changes that are independent of the accident, which may well contribute to her need for future treatment. Finally, the court concludes that Creech is entitled to recover damages for her four percent permanent partial impairment of the right upper extremity, in addition to her pain and mental anguish, inconvenience, and scarring.

8. Considering all of the above, the court concludes that Creech is entitled to compensatory damages in the total amount of $151,120.00.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying judgment to all counsel of record.

ENTER: This 10th day of July, 2007.

*John G. Conrad*
United States District Judge